KENT BURGESS, Plaintiff-Appellant, v. CHICAGO SUN-TIMES, a Division of Field Enterprises, Inc., Defendant-Appellee.

First District (2nd Division)   Nos. 83—2773, 84—0189 cons.

Opinion filed March 26, 1985.

A. Denison Weaver, of Chicago, for appellant.

Robert S. Soderstrom and James P. DeNardo, both of McKenna, Storer, Rowe, White & Farrug, of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, Kent Burgess, instituted the present action alleging retaliatory discharge, breach of an implied covenant of fair dealing, and intentional infliction of emotional distress on the part of his former employer, defendant Chicago Sun-Times. The trial court dismissed plaintiff's complaint with prejudice, and subsequently denied his motion for reconsideration and for relief from judgment. Plaintiff now contests the propriety of these orders, seeking reversal only of the dispositions as to the retaliatory discharge and emotional distress claims.

Plaintiff was employed by the defendant as a driver for the purpose of delivering newspapers to retail vendors for sale to the public. The plaintiff and his fellow drivers were covered by a collective bargaining agreement with the defendant. The agreement expressly authorized the defendant to designate the delivery routes of its employees.

On July 6, 1982, plaintiff, during the course of his employment, claimed to have been assaulted by an unknown third party. Plaintiff's requested reassignment to another route was denied by the defendant.

On July 13, 1982, plaintiff, during the course of his employment, claimed to have been the victim of an armed robbery. Again plaintiff's requested reassignment to another route was denied by the defendant.

The record reveals that plaintiff did not make any claim under the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*) and did not, individually or through his collective bargaining agent, institute any grievance action pursuant to the collective bargaining agreement. Instead, plaintiff chose not to return to work on the same route, claiming he suffered from severe stress and anxiety. When plaintiff persisted in his request for reassignment to another route and refused to return to the route assigned, he was discharged by defendant.

On March 2, 1983, plaintiff filed a three-count complaint against defendant claiming retaliatory discharge, breach of an implied covenant of fair dealing, and intentional infliction of emotional distress. On May 13, 1983, defendant filed a motion to dismiss with prejudice. The trial court ordered briefs to be filed and set the matter for September 15, 1983. Briefs were filed on time by both parties, but plaintiff's attorney did not appear on September 15, 1983, due to a clerical error of his office in scheduling cases. The court delayed its proceedings for about an hour. Attorneys for the defendant appeared on time and returned an hour later as requested by the court. Although not required to do so, defendant's attorney did not attempt to reach opposing counsel or his office to notify him of the court's short delay. The court noted that the hearing date was set by agreement of the parties and proceeded to decide the motion on the written briefs that were on file. An order was entered dismissing plaintiff's complaint with prejudice.

Following a hearing on October 19, 1983, with both counsel present, the trial court denied plaintiff's motion to vacate and reconsider. On November 10, 1983, plaintiff filed a motion for relief from judgment pursuant to section 2—1401 of the Illinois Code of Civil Procedure. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401.) This motion was denied on December 19, 1983, after which plaintiff filed a timely notice of appeal. Plaintiff does not contest the dismissal of count II dealing with breach of an implied covenant of fair dealing.

I

The first question for resolution is whether count I of plaintiff's complaint was properly dismissed for failure to state a cause of action for retaliatory discharge.

In *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, our supreme court held that, for the first time in Illinois, a cause of action should exist for employees who were discharged for filing Workers' Compensation claims. In its analysis, the court determined that the purpose of the Workers' Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*) would be seriously undermined if employers could coerce employees to forego their statutory rights under the Act by threatening to terminate employees who sought compensation for industrial injuries. *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 181-82.

In *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876, our supreme court granted leave to appeal in order to determine the "contours" of the tort of retaliatory discharge recognized in *Kelsay*. The employee in *Palmateer* was terminated for informing local law-enforcement authorities of suspected criminal activities of his co-employee, and for agreeing to assist in the investigation and trial of the co-employee if requested. In holding that the plaintiff-employee's complaint had stated a cause of action for retaliatory discharge, the court held: "The foundation of the tort of retaliatory discharge lies in the protection of public policy, and there is a clear public policy favoring investigation and prosecution of criminal offenses." (85 Ill. 2d 124, 133.) As a result, the *Palmateer* court concluded that in order to bring a cause of action under Illinois law, "[a]ll that is required is that the employer discharge the employee in retaliation for the employee's activities, and that the discharge be in contravention of a clearly mandated public policy." 85 Ill. 2d 124, 134.

The grounds on which count I of plaintiff's complaint was dismissed were: (1) that plaintiff did not exhaust the administrative remedies provided in the collective bargaining agreement between defendant and plaintiff's union; (2) that there are no allegations that plaintiff was discharged in retaliation for filing a Workers' Compensation claim; and (3) that no cause of action was stated due to the factual insufficiency of the allegations.

■ First, as defendant concedes, a cause of action for retaliatory discharge is now recognized in Illinois "independent of any contract remedy the employee may have based on [a] collective-bargaining agreement." (*Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 149.) Plaintiff need not even plead the exhaustion of grievance proce-

dures in order to sustain the cause of action. 105 Ill. 2d 143, 152.

Second, there exists no requirement in Illinois that in order to state a viable cause of action for retaliatory discharge, a plaintiff must plead that he was discharged in retaliation for *filing* a Workers' Compensation claim. (See *Darnall v. Impact Industries, Inc.* (1984), 105 Ill. 2d 158, 161, 473 N.E.2d 935.) We refuse to impose such a requirement here. As was clearly stated in *Palmateer*, all that is necessary is that the defendant here discharged plaintiff in retaliation for his "activities," and that such "discharge be in contravention of a clearly mandated public policy." *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 134.

With respect to the third ground for dismissal, *i.e.*, the factual insufficiency of plaintiff's allegations, we agree that the trial court's ruling was correct. There is not a single allegation in plaintiff's complaint that he intended to seek relief under the Workers' Compensation Act. Plaintiff has alleged no more than that he suffered fear and anxiety, that he contemplated medical attention, and that he was unable to return to work. In addition, there exists no allegation that defendant was informed, or in any way found out, that plaintiff was pursuing any remedy under the Workers' Compensation Act, and that defendant went ahead and discharged him because of it. As a consequence, it is evident that a "clearly mandated public policy" is not involved in the case at bar.

In *Palmateer*, the court noted that actions for retaliatory discharge have been denied where it was clear that only private interests were at stake, *e.g.*, where an employee took too much sick leave (*Jones v. Keogh* (1979), 137 Vt. 562, 409 A.2d 581), or where he disputed his employer's internal management system (*Keneally v. Orgain* (1980), 186 Mont. 1, 606 P.2d 127). The present case is not one in which the public policy was clear. Plaintiff was not fired for refusing to evade jury duty, refusing to commit perjury, refusing to violate a consumer credit code, refusing to engage in price fixing, or refusing to violate any statute in general.

In this case, plaintiff was not asked to do anything illegal or improper. He was not asked to engage in any activities that were in contravention of a clearly mandated public policy. Defendant requested that plaintiff perform work which it had the right to assign to him under its collective bargaining agreement. Plaintiff's discharge resulted from his unilateral choice not to return to work for an alleged fear of a risk which he, as well as each of his fellow drivers, knowingly undertook. Plaintiff sought to have defendant assign a fellow employee, covered by the same collective bargaining agreement, to the route

which he refused.

Plaintiff had the right to bring a grievance; defendant, however, retained the right to discharge him for just cause. "Generally, if a union employee's grievance goes to arbitration and the arbitrator does not find just cause for the employee's discharge, the remedy will be simply job reinstatement and full back pay." *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 150, citing Silzer, *Workers' Compensation: Retaliatory Discharge of Employees Covered by a Collective Bargaining Agreement*, 70 Ill. B.J. 164, 166 (1981).

Because the factual allegations in plaintiff's complaint are insufficient for recovery under the theory of retaliatory discharge, we hold that the trial court's dismissal of count I was proper.

## II

■ Next, it is plaintiff's contention that count III of his complaint was erroneously dismissed for failure to state a cause of action for intentional infliction of emotional distress. We disagree.

In order to state a cause of action for this tort, facts must be alleged which establish: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by plaintiff was severe; and (3) that defendant's conduct was such that defendant knew that severe emotional distress would be certain or substantially certain to result." *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 89-90, 360 N.E.2d 765; *Heying v. Simonaitis* (1984), 126 Ill. App. 3d 157, 165, 466 N.E.2d 1137.

Regarding the nature of defendant's conduct, liability exists only where such conduct has been " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency ***.' " (*Plocar v. Dunkin' Donuts of America, Inc.* (1981), 103 Ill. App. 3d 740, 745-46, 431 N.E.2d 1175, quoting Restatement (Second) of Torts sec. 46, comment d (1965).) With respect to the severity of plaintiff's distress, " '[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity.' " *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 90, quoting Restatement (Second) of Torts sec. 46, comment j (1965).

In order to determine whether a plaintiff has stated a cause of action for intentional infliction of emotional distress, a reviewing court must "accept as true the allegations contained in the plaintiff's complaint." *Witkowski v. St. Anne's Hospital of Chicago, Inc.* (1983), 113 Ill. App. 3d 745, 752, 447 N.E.2d 1016, *appeal denied* (1983), 96

Ill. 2d 552.

Whether specific conduct can be characterized as extreme and outrageous depends, of course, on the facts in each case. (*Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157.) "A mere statement that an act was done with a certain purpose or intent, without a statement of facts showing such purpose or intent, is a conclusion of law." *Tolbolt v. Allstate Insurance Co.* (1979), 75 Ill. App. 3d 57, 63, 393 N.E.2d 1171, *appeal denied* (1979), 79 Ill. 2d 624.

Regarding the present action, it is claimed that defendant "engaged in a course of conduct toward the plaintiff which included harassment, threats and eventually unjust termination of his employment, with conscious disregard for the safety and well-being of the plaintiff." This allegation of tortious conduct is insufficient in law because it merely characterized defendant's purported behavior in *conclusory* language. Indeed, no specific facts are set forth in the complaint indicating what harassment or threats plaintiff was subject to, much less by whom or when they were carried out.

Stripped of conclusions, the conduct about which plaintiff complains consisted of his reassignment, despite objection, to the same delivery route on which he claims to have been assaulted and robbed in July 1982. Count III additionally alleged that defendant demanded that he take financial responsibility for the goods claimed to have been stolen from him on July 13, 1982. By virtue of this purported abuse by defendant of its position of authority over plaintiff, it is claimed that plaintiff now "suffers from acute post-traumatic stress and other psychotherapeutic disorders and has been unable to rejoin the work force." Whatever the claimed motives for the obstinacy, threats or harassment alleged in the complaint, the question we must determine is "whether it could reasonably be considered extremely outrageous for an employer to intentionally subject an employee to such conduct." *Milton v. Illinois Bell Telephone Co.* (1981), 101 Ill. App. 3d 75, 79, 427 N.E.2d 829.

Accepting as true the allegations set forth in plaintiff's complaint, it is clear that defendant's employment policy with respect to drivers cannot be characterized as so outrageous, so atrocious and so utterly intolerable that a person of ordinary sensibilities could not reasonably be expected to endure it. In support of a contrary conclusion, plaintiff cites and strongly relies on *Milton.* Such reliance, however, is misplaced. In *Milton*, the appellate court held that a complaint adequately stated a claim for intentional infliction of emotional distress where the plaintiff alleged, *inter alia*, that defendant employer ordered him to falsify certain work reports and, when plaintiff consist-

ently refused, defendant retaliated against him by coercion and harassment. The *Milton* court premised its holding on the fact that by demanding plaintiff to falsify his work reports, defendant, as a public utility, was attempting to coerce plaintiff to engage in illegal conduct. (*Milton v. Illinois Bell Telephone Co.* (1981), 101 Ill. App. 3d 75, 80-81.) Plainly, the situation at bar cannot be viewed as parallel to *Milton*, for the complaint now before us is absolutely devoid of any suggestion that defendant attempted to coerce plaintiff into illegal activity. Rather, defendant merely insisted that plaintiff perform the duties he undertook as an employee-truck driver of the Chicago Sun-Times.

In essence, defendant's actions did not reach that extreme level of outrageousness and severity "beyond all possible bounds of decency" so as to give rise to a cause of action for intentional infliction of emotional distress. "[T]his cause of action is reserved for especially abusive and atrocious transgressions, and [the appellate court] will not expand upon the supreme court's definition to cover such allegations as the instant plaintiff's, as heartless and callous as those allegations may first appear." *Witkowski v. St. Anne's Hospital of Chicago, Inc.* (1983), 113 Ill. App. 3d 745, 754.

It is our conclusion, therefore, that count III of plaintiff's complaint was properly dismissed.

### III

The final issue for resolution concerns the propriety of the trial court's decision to dismiss plaintiff's complaint in the absence of his attorney, and then to subsequently deny his motions for reconsideration and relief from judgment.

First, plaintiff incorrectly refers to the dismissal order as having been entered *ex parte*. "An *ex parte* order, which is clearly within the power of the court to enter, is by definition an order originally granted at the insistence and for the benefit of one party, without notice to or contestation by any person adversely interested." (*American Re-Insurance Co. v. MGIC Investment Corp.* (1979), 73 Ill. App. 3d 316, 325-26, 391 N.E.2d 532, citing *Kimbrough v. Parker* (1948), 336 Ill. App. 124, 83 N.E.2d 42.) Without question, plaintiff here was provided with notice of the September 15, 1983, hearing on defendant's motion to dismiss. Indeed, the order setting this hearing date specifically recited that, "due notice having been given, all parties agreeing thereto." Further, the proof is in the record that plaintiff contested defendant's motion by filing a nine-page memorandum in opposition on August 17, 1983. And it is reasonable to infer that due

consideration was given to this document in view of the following language contained in the trial court's order of dismissal: "[T]he Court being fully advised in the premises, the Court having read the briefs filed by all parties herein ***." Since it is clear that the dispositive order in question was not entered *ex parte*, we must disagree with plaintiff's argument for reversal on this ground.

■ Second, it is our opinion that the denial of plaintiff's motions for reconsideration and relief from judgment was proper. Neither motion advanced a substantive basis upon which vacation of the dismissal order would have been warranted. The motion to vacate merely cited secretarial error as grounds for reconsideration. Again, the fact that counsel for plaintiff failed to appear at the time the dismissal order was entered had absolutely no bearing on the validity of such an order.

Moreover, we note that any additional motion filed by plaintiff had to conform to the requirements of section 2—1401 of the Illinois Code of Civil Procedure. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401.) Section 2—1401 allows a litigant to petition the trial court to reconsider a final judgment if the following requisites are satisfied: (1) the existence of a meritorious claim or defense; (2) due diligence in presenting the claim or defense in the original action; (3) lack of fraud or negligence in failing to present an error of fact or a valid claim or defense to the trial court at the time the original order was entered; and (4) due diligence in filing the petition under section 2—1401. (*Halas v. Executor of Estate of Halas* (1983), 112 Ill. App. 3d 940, 948, 445 N.E.2d 1264.) "[N]ew matters to be brought to the court's attention in a section 2—1401 petition are those facts not appearing on the record which, if known to the court at the time the judgment was entered, would have prevented its rendition." *In re Marriage of Ohlson* (1984), 126 Ill. App. 3d 374, 381, 466 N.E.2d 1280.

■ The section 2—1401 petition did not bring to the trial court's attention any new facts not already of record. This second post-judgment motion simply expanded the arguments made in plaintiff's motion to vacate, as well as in his memorandum of law filed in opposition to defendant's motion to dismiss. Plaintiff's section 2—1401 petition raised nothing new; it consisted of nothing but reargument. Because a petition brought under section 2—1401 cannot be used to relitigate questions previously adjudicated (*Davis v. Chicago Transit Authority* (1980), 82 Ill. App. 3d 987, 989, 403 N.E.2d 615), the court below did not err in denying plaintiff's second post-judgment motion.

■ It is not until plaintiff's reply brief in this court that he questions the propriety of the trial judge's refusal to allow him the oppor-

tunity to amend his complaint. Because this issue was not properly raised in plaintiff's opening brief, we consider the merits or ramifications of such an argument as having been waived for purposes of appellate review. *Unger v. Continental Assurance Co.* (1984), 122 Ill. App. 3d 376, 380, 461 N.E.2d 531.

We noted above that on September 15, 1983, plaintiff's attorney did not appear at the scheduled hearing on defendant's motion to dismiss. The trial court delayed the hearing for an hour. During the interim, the attorney for the defendant did not attempt to reach opposing counsel. Fortunately, the matter was properly disposed of on the briefs before the court with no undue advantage. It would have been better had counsel for defendant followed Justice Burke's advice: "The court recognizes that telephones are available and that courtesy among lawyers is and should be the rule rather than the exception." *Stidham v. Pappas* (1966), 78 Ill. App. 2d 402, 407, 223 N.E.2d 318, *appeal denied* (1967), 35 Ill. 2d 632.

For the reasons set out herein, the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

STAMOS, P.J., and PERLIN, J., concur.