**Christine K. SCHROEDER, Plaintiff-Appellant,**

v.

**LUFTHANSA GERMAN AIRLINES, et al., Defendants-Appellees.**

**No. 88-1969.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 20, 1989.

Decided May 23, 1989.

---

John P. DeRose, John P. DeRose & Assoc., Chicago, Ill., for plaintiff-appellant.

Thomas H. Stern, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, KANNE, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Christine K. Schroeder, the plaintiff-appellant, brought this diversity suit[1] against Lufthansa German Airlines and unknown employees of Lufthansa (collectively "Lufthansa"), the defendants-appellees, under the Warsaw Convention for injuries sustained while she was a passenger on Lufthansa. In her first amended complaint, Schroeder sought damages for slander, battery, false arrest, false imprisonment, in-

1. Christine K. Schroeder is a citizen of Illinois. Lufthansa German Airlines is a corporation organized under the laws of West Germany, with its principal place of business in Frankfurt, West Germany.

tentional infliction of emotional distress, and failure to warn. She also claimed that the Warsaw Convention's liability cap of $75,000 did not apply because Lufthansa's actions amounted to willful misconduct. The district court dismissed her failure to warn claim on the ground that it did not state a cause of action and subsequently granted Lufthansa's summary judgment motion as to the rest of her claims. In granting Lufthansa's summary judgment motion, the district court ruled that Lufthansa's actions were justified under the circumstances and that Lufthansa was not responsible for the actions of the Royal Canadian Mounted Police ("RCMP"). The district court further ruled that even if Lufthansa were liable, the $75,000 liability cap would still apply and that the Warsaw Convention does not allow recovery for slander or for intentional infliction of emotional distress.

Schroeder now appeals from the district court's granting of Lufthansa's motion for summary judgment. On appeal, Schroeder raises four issues: (1) whether the district court erred in granting summary judgment on her claims for battery, false arrest, false imprisonment, and intentional infliction of emotional distress; (2) whether emotional injuries are compensable under the Warsaw Convention; (3) whether the $75,000 liability cap applies to her causes of action; and (4) whether Lufthansa is liable for the actions of the RCMP. For the reasons stated below, we hold that Lufthansa is not liable for the actions of the RCMP and that the district court properly granted Lufthansa's motion for summary judgment. Therefore, without reaching the other two issues on appeal, we affirm the district court.

## I. Statement of Facts

On March 19, 1981, Schroeder was a passenger on Lufthansa flight 431, flying from Chicago to Frankfurt, West Germany. She was traveling with sixteen other students from Barrington High School and three adult chaperones. These students were members of the high school's German classes, and they were participating in an educational tour of Germany.

After flight 431 had departed, Douglas Dillman, a classmate of Schroeder, telephoned the Air Traffic Control Center in Chicago and reported that Schroeder's luggage contained a bomb. Dillman told the Chicago Air Traffic Control Center that Schroeder did not place the bomb in her luggage and that she did not even know that it was there. The Chicago Air Traffic Control Center quickly notified Lufthansa in Frankfurt, the Federal Bureau of Investigation, the RCMP, and the Air Traffic Control Center in Moncton, Canada of the phone call. The Moncton control center then radioed flight 431, which was in Canadian airspace at this time, and informed the pilot that a bomb was in Schroeder's luggage or on her person. The pilot requested and received permission to make an emergency landing at Gander, Canada. In order to keep the passengers calm, Lufthansa told them that the plane was landing in Gander due to technical problems.

The pilot had a flight attendant page Schroeder so that he could speak with her. After Schroeder walked to the front of the plane, she was met by the flight attendant who asked her to accompany him to the cockpit. The attendant then took Schroeder by the arm and led her into the cockpit. The pilot informed Schroeder about the phone call and inquired into whether she knew anything about it. Schroeder responded that she knew nothing about it and started to weep. Because he did not want the other passengers to be alarmed, the pilot requested that Schroeder remain in the cockpit. After she took an empty seat, the flight engineer fastened the four seat belts for her. Schroeder never stated that she wanted to leave the cockpit, and no one threatened her.

After the plane landed, all the passengers deplaned. Katherine Baer, one of the adult chaperones, was reluctant to leave the plane without Schroeder. A flight attendant, however, told her about the phone call and stated that Schroeder would be brought to the terminal. Eventually, Constable Parsons of the RCMP arrived, and he took custody of Schroeder. After searching her handbag, he transported

Schroeder in a military car to the terminal building. At the terminal building, Constables Bourden and Smith questioned Schroeder about the bomb threat. During the course of their questioning, Officer Paulovics, a female officer of the Canadian Customs and Excise Department, conducted a personal search of Schroeder. She took Schroeder into another office and asked her to take her clothes off. Officer Paulovics then examined Schroeder's clothes and her body, without touching her. When Officer Paulovics finished conducting the search, she escorted Schroeder back to Constables Bourden and Smith. Eventually, Baer joined Schroeder. At no time did Schroeder object to being searched or questioned, nor did she state that she wanted to leave. Indeed, Schroeder was always cooperative.

The entire questioning of Schroeder by the RCMP lasted more than five hours. During this period, Schroeder was visibly upset, crying much of the time. After the RCMP finished their investigation of the incident, all the passengers, including Schroeder, reboarded the plane and completed the flight to Frankfurt. As a result of this ordeal, however, Schroeder experienced severe anxiety. She sought psychiatric treatment, and her doctor diagnosed her as suffering from post-traumatic stress syndrome.

On March 13, 1983, Schroeder filed her initial complaint in the district court. In her first amended complaint, Schroeder sued Lufthansa under the Warsaw Convention[2] for slander, battery, false arrest, false imprisonment, intentional infliction of emotional distress, and failure to warn. She alleged that the $75,000 liability cap contained in the Warsaw Convention did not apply because Lufthansa's actions

amounted to willful misconduct. The district court, applying Illinois law, dismissed her failure to warn claim for failing to state a claim upon which relief could be granted and subsequently granted Lufthansa's summary judgment motion as to the rest of her tort claims. In granting Lufthansa's summary judgment motion, the district court ruled: (1) that under the circumstances, Lufthansa's actions were justified; (2) that even if Lufthansa were liable, the Warsaw Convention's $75,000 liability cap would still apply because Lufthansa's actions did not amount to willful misconduct; (3) that Lufthansa was not responsible for the actions of the RCMP; and (4) that the Warsaw Convention does not allow recovery for slander or for intentional infliction of emotional distress. We affirm.

## II. Liability of Lufthansa for the RCMP's Detention and Search of Schroeder

Schroeder contests the district court's ruling that "Lufthansa is not responsible for any actions taken by the [RCMP]." Rec. 174, Tr. at 6. She argues that under both the Warsaw Convention and Illinois law, Lufthansa is liable for the injuries she allegedly sustained due to the RCMP's detention and search of her. Because some of Schroeder's tort allegations contained in her first amended complaint derive in part from the actions of the RCMP, we will first determine whether Lufthansa is liable for their actions before deciding whether the district court properly granted summary judgment in favor of Lufthansa.

### A. Lufthansa's Liability Under the Warsaw Convention

We first turn to Schroeder's claim that under the Warsaw Convention Lufthansa is

---

**2.** The United States is a party to the Convention for Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. 3000 (1934), *reprinted in* 49 U.S.C.A.App. § 1502 note [hereinafter "Warsaw Convention"]. The Warsaw Convention governs the "international transportation of persons, baggage, or goods performed by aircraft." *Id.,* ch. I, art. 1(1). The Warsaw Convention was later amended by the Montreal Agreement which, among other things, increased the liability cap from $8,300 to

the current $75,000. *See* Order of Civil Aeronautics Board Approving Increases in Liability Limitations of Warsaw Convention and Hague Protocal, 31 Fed.Reg. 7302, *reprinted in* 49 U.S.C.A.App. § 1502 note. "As a ratified treaty of the United States the Warsaw Convention is equal in stature and force as any other domestic federal law." *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982,* 821 F.2d 1147, 1161 n. 19 (5th Cir.1987).

liable for the actions taken by the RCMP. "The scope of the Warsaw Convention is a matter of federal law and federal treaty interpretation...." *Maugnie v. Compagnie Nationale Air Fr.*, 549 F.2d 1256, 1258 (9th Cir.), *cert. denied*, 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1979). In determining its scope, our analysis must start "with the text of the treaty and the context in which the written words are used." *Air Fr. v. Saks*, 470 U.S. 392, 397, 105 S.Ct. 1338, 1341, 84 L.Ed.2d 289 (1985).

■ Article 17 of the Warsaw Convention states that an airline is liable for a passenger's injury if the accident which caused the injury "took place on board the aircraft or in the course of any of the operations of embarking or disembarking."[3] Warsaw Convention, ch. III, art. 17. Therefore, Lufthansa cannot be held liable under the Warsaw Convention for the actions of the RCMP unless the detention and search of Schroeder occurred on the plane or in the course of embarking or disembarking. Although the RCMP took custody of Schroeder from Lufthansa, it is clear that they did not conduct their detention and search of her on the plane.[4] Thus, the issue is whether the RCMP's detention and search of her was done in the course of embarking or disembarking, and our resolution of this issue depends on the facts of this case. *See Schmidkunz v. Scandinavian Airlines Sys.*, 628 F.2d 1205, 1207 (9th Cir.1980).

Although uncommon, the issue before us is not a novel one. Four other circuits have devised and utilized tests for determining the scope of "embarking and disembarking." For example, in *Day v. Trans World Airlines, Inc.*, 528 F.2d 31 (2d Cir.1975), *cert. denied*, 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976), passengers were injured in a terrorist attack at

the Athens airport while they were preparing to board a flight to New York. In deciding whether the passengers were injured in the course of embarking or disembarking, the Second Circuit approved the district court's use of "a triparte test based on activity (what the plaintiffs were doing), control (at whose direction) and location." *Id.* at 33. The court reasoned that the drafters of the Warsaw Convention were concerned not just with the location of the passenger, but also with whether the passenger's actions were a part of the process of embarking or disembarking. *See id.* Subsequently, both the First and Third Circuits approved the use of these three factors in delineating the boundaries of article 17. *See Martinez Hernandez v. Air Fr.*, 545 F.2d 279, 282 (1st Cir.1976) ("[W]e believe that the nature of a plaintiff's activity when injured, its location, and the extent to which the airline was exercising control over plaintiff at the time of injury are certainly relevant considerations in determining the applicability of article 17."), *cert. denied*, 430 U.S. 950, 97 S.Ct. 1592, 51 L.Ed.2d 800 (1977); *Evangelinos v. Trans World Airlines, Inc.*, 550 F.2d 152, 155 (3d Cir.1977) (en banc) ("In our view, three factors are primarily relevant to a determination of the question of liability under Article 17: location of the accident, the activity in which the injured person was engaged, and the control by [the airline over] such injured person...."). The Ninth Circuit, however, uses a slightly different test. It prefers "an approach which requires an assessment of the total circumstances surrounding a passenger's injuries.... Location of the passenger is but one of several factors to be considered." *Maugnie*, 549 F.2d at 1262.

Looking at the total circumstances surrounding Schroeder's detainment and

---

3. Although we quote from the official American translation of the Warsaw Convention, we recognize that the "governing text of the Convention is in the French language...." *Air Fr.*, 470 U.S. at 397, 105 S.Ct. at 1341. For the purposes of this appeal, it is not necessary for us to interpret the original French text of the Warsaw Convention.

4. One district court has interpreted the phrase "on board the aircraft" to include "all of the time between embarkation at the origin of a flight and disembarkation at a scheduled destination of a flight." *Husserl v. Swiss Air Transp. Co.*, 388 F.Supp. 1238, 1247 (S.D.N.Y.1975) (citing no authority to support this proposition). As we later discuss, however, the legislative history of the Warsaw Convention clearly contradicts such an interpretation.

search, with particular emphasis on location, activity, and control, leads us to the conclusion that any injury Schroeder suffered due to the action of the RCMP was not sustained in the course of embarking or disembarking from the airplane. First, we note that the RCMP conducted their detention and search of Schroeder in the terminal building, away from the airplane. Additionally, the RCMP carried out these actions in an area that was neither owned nor leased by Lufthansa. Second, the RCMP was questioning Schroeder about a bomb threat. This activity is not even remotely related to a passenger's embarking or disembarking from an airplane. Finally, we note that Lufthansa had no control whatsoever over Schroeder or the RCMP while the RCMP detained and searched her. Although Schroeder's first amended complaint alleges that the RCMP officials were acting as agents for Lufthansa, *see* Plaintiff's First Amended Complaint, Rec. 63, ¶ 43 (Count I), she has failed to present any facts to support this bare allegation.

"Moreover, it is well established that treaty interpretation involves a consideration of legislative history and the intent of the contracting parties." *Maugnie*, 549 F.2d at 1258. Our interpretation of article 17 is fully consistent with the legislative history of the Warsaw Convention. The delegates of the Warsaw Convention expressly rejected a proposal which would have made an airline liable for all injuries a passenger sustained from the time he first entered the airport of departure until the moment he left the airport of arrival. *See id.* at 1260; *Martinez Hernandez*, 545 F.2d at 283; *Day*, 528 F.2d at 35. Instead, the delegates opted for the more restrictive language contained in article 17. Thus, the contracting parties to the Warsaw Convention never intended for an airline to be liable for every injury sustained by a passenger before the passenger reached his destination, and we will not impose such liability. Therefore, because any injury Schroeder allegedly suffered due to her detainment and search by the RCMP was not sustained on the plane or in the course of embarking or disembarking, Lufthansa

cannot be held liable for those injuries under article 17 of the Warsaw Convention.

## B. Lufthansa's Liability Under Illinois Law

■ Schroeder also contends that Lufthansa is liable for the RCMP's detention of her under Illinois law. She argues that under Illinois false arrest and false imprisonment law, Lufthansa is liable because it procured the RCMP's unlawful detention of her. Without deciding whether the RCMP's detention amounted to a false arrest or false imprisonment of Schroeder, we reject her argument.

Under Illinois law, an "arrest by an officer caused or procured by a private person is the same as an arrest by the private person." *Dutton v. Roo–Mac, Inc.*, 100 Ill.App.3d 116, 55 Ill.Dec. 458, 461, 426 N.E.2d 604, 607 (1981); *see also Campbell v. Kaczmarek*, 39 Ill.App.3d 465, 350 N.E.2d 97, 101 (1976) ("[F]or a person to be liable for a false imprisonment, it must appear that he personally participated therein by direct act or by indirect procurement."). Thus, if a false arrest or false imprisonment results from the officer's actions, the individual procuring or causing the arrest can be held liable for it. *See Dutton*, 426 N.E.2d at 607–08; *Green v. No. 35 Check Exch., Inc.*, 77 Ill.App.2d 25, 222 N.E.2d 133, 136 (1966).

By applying these principles to the case before us, we conclude that Lufthansa cannot be held liable under Illinois law for the RCMP's detention of Schroeder. We note that Schroeder has failed to produce any evidence showing that Lufthansa procured her detention by the RCMP. There are no facts showing that Lufthansa asked the RCMP to detain her or that it even requested the presence of the RCMP. *See* Defendant's First Amended Affirmative Defenses, Rec. 132, Exhibit 9 (deposition of Christine K. Schroeder at 50) [hereinafter Schroeder Deposition] (stating that she did not hear anyone from Lufthansa tell the RCMP to question or search her). Similarly, Schroeder has not produced any evidence to show that Lufthansa aided the RCMP in detaining and searching her at

the terminal building. *See id.* at 78 (stating that during her questioning by the RCMP, she did not see anyone from Lufthansa).

Schroeder, however, argues that Lufthansa is liable for her detention because the pilot gave the RCMP inaccurate information, resulting in her detention. We realize that under Illinois law, although the mere giving of information to the police is not enough to constitute participation in an arrest, *e.g., Butler v. Goldblatt Bros.*, 589 F.2d 323, 326 (7th Cir.1978), *cert. denied*, 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 53 (1979); *Karow v. Student Inns, Inc.*, 43 Ill.App.3d 878, 2 Ill.Dec. 515, 519, 357 N.E.2d 682, 686 (1976), an individual procures an arrest when he gives an arresting officer information which is the *sole* basis for the arrest, *see Odorizzi v. A.O. Smith Corp.*, 452 F.2d 229, 231 (7th Cir.1971); *Dutton*, 426 N.E.2d at 607. But the detention of Schroeder could not have been based *solely* on the information conveyed to the RCMP by the pilot. The record shows that the Chicago Air Traffic Control Center had also discussed the bomb threat with the RCMP. *See* Plaintiff's Memorandum of Law, Rec. 150 (attached deposition of Richard A. White at 15, 43–46). Moreover, even though the pilot of flight 431 may have mistakenly given the RCMP some inaccurate information concerning the bomb threat, this fact alone cannot be the basis for liability. *See Butler*, 589 F.2d at 326 ("[A] private party who furnishes inaccurate information to law enforcement officers [can] not be held liable for false arrest on that ground alone."). Therefore, under these circumstances, we cannot say that Lufthansa procured, caused, or participated in her detention.

In addition, even if Lufthansa had procured the RCMP's detention of Schroeder, Lufthansa would not be liable for the RCMP's actions because it had reasonable grounds to believe that a criminal offense was being committed. Illinois statutory law provides: "Any person may arrest another when he has reasonable grounds to believe that an offense other than an ordinance violation is being committed." Ill. Stat.Ann. ch. 38, ¶ 107–3 (Smith–Hurd 1980); *see People v. Lawson*, 36 Ill.App.3d 767, 345 N.E.2d 41, 44 (1976). This statute protects an individual who procures an arrest, so long as he has reasonable grounds to believe a crime is being committed. *See Dutton*, 426 N.E.2d at 608. An arrest authorized by this statute cannot be the basis for civil liability. *Id.; Karow*, 357 N.E.2d at 686.

Lufthansa had reasonable grounds to believe that Schroeder was committing a criminal offense. The pilot had received a radio message that a bomb was either on Schroeder or in her luggage. Defendant's Motion for Summary Judgment, Rec. 140, Exhibit 1 (statements of Eric Spencer Dawe and Willet McKay Stevenson). Significantly, contrary to the phone call received by the Chicago Air Traffic Control Center, the message the pilot received did not state that Schroeder was innocent of any wrongdoing or that she knew nothing about the bomb threat. *Id.* Due to the extreme seriousness of the incident and the potential danger posed to other passengers, Lufthansa had reasonable grounds to believe, based on this radio message, that a crime was being committed.

Schroeder argues that Lufthansa lacked reasonable grounds to believe that a crime was being committed because the pilot questioned her and assured himself that she knew nothing about the bomb threat. The pilot, however, did not search Schroeder to see if explosives were strapped to her body, nor could he have checked her luggage. Solely based on his questioning of her, the pilot could not be certain that she did not have a bomb on her or in her luggage. A potential bombing of an airline is a serious matter which must be fully investigated. Therefore, even if Lufthansa had procured the RCMP's detention of Schroeder, it would not be liable for false arrest or false imprisonment because it had reasonable grounds to believe that Schroeder was committing a crime.

### III. *The Granting of Summary Judgment in Favor of Lufthansa*

Schroeder challenges the district court's granting of Lufthansa's motion for summa-

ry judgment. She claims that summary judgment was improper because a factual dispute exists as to whether Lufthansa's actions were justified under Illinois law.[5] Therefore, she requests that our court reverse the district court and reinstate her causes of action for false arrest, false imprisonment, battery, and intentional infliction of emotional distress.

Rule 56(c) of the Federal Rules of Civil Procedure provides that the district court shall grant a motion for summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." The initial responsibility rests on the moving party to demonstrate why it believes that there is no dispute as to a material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Korf v. Ball State Univ.*, 726 F.2d 1222, 1226 (7th Cir.1984). The party opposing the motion must then set forth *specific facts* showing that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Hermes v. Hein*, 742 F.2d 350, 353 (7th Cir.1984). Bare allegations not supported by specific facts are insufficient in opposing a motion for summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

The existence of some factual disputes will not necessarily defeat a motion for summary judgment. Rule 56(c) only requires that "there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In this regard, a genuine issue will exist if the dispute over a material fact could affect the outcome of the litigation. *See id.; Korf*, 726 F.2d at 1226. There can be no genuine issue of material fact, however, if the party opposing the motion fails to "make a showing sufficient to establish the existence of an element essential to that party's case...." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2553.

We will now examine each of Schroeder's tort claims. Because we have already held that Lufthansa is not liable for the actions taken by the RCMP, we review her tort claims based only on actions taken by Lufthansa.[6] Of course, we review the evi-

---

5. In granting Lufthansa's motion for summary judgment, the district court applied Illinois law to her tort claims. The court ruled:

   The Convention does not create a cause of action, but is merely a presumption of liability if otherwise applicable substantive law provides a claim for relief based on the injury alleged. [citing *Maugnie*, 549 F.2d at 1258 n. 2] Because both parties have presented this claim as a matter of Illinois substantive law, the Court will analyze the Warsaw Convention action under Illinois substantive law.

   Rec. 174, Tr. at 2–3. Although this was the prevalent view at one time, *see Dunn v. Trans World Airlines, Inc.*, 589 F.2d 408, 411 (9th Cir. 1979) ("[T]he majority of courts have in the past adhered to the proposition that no cause of action is created by the Convention."), recently, courts have consistently rejected this proposition. Instead, most courts have held that the Warsaw Convention creates a cause of action. *E.g., Boehringer–Mannheim Diagnostics, Inc. v. Pan Am. World Airways, Inc.*, 737 F.2d 456, 458 (5th Cir.1984), *cert. denied*, 469 U.S. 1186, 105 S.Ct. 951, 83 L.Ed.2d 959 (1985); *In re Mex. City Aircrash of Oct. 31, 1979*, 708 F.2d 400, 412 (9th Cir.1983); *Benjamins v. British Eur. Airways*, 572 F.2d 913, 917–18 (2d Cir.1978), *cert. denied*, 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979). Because the Warsaw Convention can create a cause of action, courts have held that when it is applicable it is the exclusive remedy, *e.g., St. Paul Ins. Co. v. Venezuelan Int'l Airways, Inc.*, 807 F.2d 1543, 1546 (11th Cir.1987); *Harpalani v. Air India, Inc.*, 622 F.Supp. 69, 73 (N.D.Ill.1985), and pre-empts any state law, *Boehringer–Mannheim*, 737 F.2d at 459.

   These recent cases suggest that the district court may have erred in applying Illinois law to Schroeder's tort claims. Our circuit, however, has not yet decided whether the Warsaw Convention creates a cause of action, and we will not do so in this appeal. Because neither party has appealed from the district court's decision to apply Illinois law, that issue is not properly before us. *See Beard v. Whitley County REMC*, 840 F.2d 405, 408 (7th Cir.1988). Therefore, because Schroeder has waived her right to appeal this issue, we will review Schroeder's tort claims under Illinois law.

6. For example, in her first amended complaint, Schroeder bases her battery claim in part on the allegation that "the strip search by the [RCMP] of [Schroeder] whereby they physically removed her clothing piece by piece, was done without [Schroeder's] consent and amounted to an unwarranted physical contact of an offensive

dence in the light most favorable to Schroeder, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and we draw all *reasonable* inferences from the underlying facts in her favor, *Hermes*, 742 F.2d at 353; *Korf,* 726 F.2d at 1226.

## A. False Arrest and False Imprisonment

We will simultaneously examine Schroeder's claims for false arrest and false imprisonment since they are factually interrelated. Under Illinois law, false arrest consists of a restraint or an arrest caused by another without reasonable grounds to believe that a crime is being committed. *Karow*, 357 N.E.2d at 519. False imprisonment is the unlawful restraint of another's personal liberty or freedom of movement. *See Hajawii v. Venture Stores, Inc.*, 125 Ill.App.3d 22, 80 Ill.Dec. 461, 464, 465 N.E. 2d 573, 576 (1984); *Robinson v. Wieboldt Stores, Inc.*, 104 Ill.App.3d 1021, 60 Ill.Dec. 767, 770, 433 N.E.2d 1005, 1008 (1982); *Sparling v. City of La Salle*, 83 Ill.App.3d 125, 38 Ill.Dec. 538, 549, 403 N.E.2d 769, 770 (1980). Although an action for false arrest is not identical to an action for false imprisonment, a false arrest is one way of committing a false imprisonment. *See Dutton*, 426 N.E.2d at 461.

Both torts center on an unlawful restraint of another person. In this regard, actual force is not necessary. *See Lopez v. Winchell's Donut House*, 126 Ill.App.3d 46, 81 Ill.Dec. 507, 509, 466 N.E.2d 1309, 1311 (1984); *Marcus v. Liebman*, 59 Ill. App.3d 337, 16 Ill.Dec. 613, 615, 375 N.E.2d 486, 488 (1978). The unlawful restraint can be effected by words alone. *Lopez*, 466 N.E.2d at 1311; *Marcus*, 375 N.E.2d at 488. The restrained individual's submission, however, "must be to a threatened and reasonably apprehended force." *Id.* It is essential that the confinement be against the person's will, otherwise there is no unlawful restraint. *Lopez*, 466 N.E.2d at 1312.

In her first amended complaint, Schroeder alleges that Lufthansa forcibly strapped and restrained her in a seat in the cockpit, which deprived her of her freedom. Plaintiff's First Amended Complaint, Rec. 63, ¶ 15 (Counts II & V), ¶ 44 (Count V). She further alleges that she was not allowed to speak to the tour chaperones, although she requested to do so. *Id.* ¶ 18 (Counts II & V). Finally, she claims that Lufthansa committed these acts without having "a reasonable belief that [she] was a terrorist with a twenty-five (25) pound bomb on her person." *Id.* ¶ 43 (Counts II & V). Schroeder argues that under these circumstances, this treatment of her amounted to an unlawful restraint.

■ Lufthansa's actions did not amount to an unlawful restraint of Schroeder. The evidence indicates that Schroeder voluntarily cooperated with the Lufthansa personnel, willingly answered all their questions, and never voiced any objection to their requests. For example, she has not presented any facts to show that she ever told Lufthansa personnel that she did not want to go to the cockpit or, after she was there, that she wanted to leave. *See* Plaintiff's Memorandum of Law, Rec. 150 (attached deposition of Christine K. Schroeder at 130–31, 136) (stating that she did not voice an objection to going to the cockpit or to staying there). Additionally, although Schroeder may not have wanted to sit down in the cockpit, she voluntarily complied with the pilot's request without voicing an objection. *See* Schroeder Deposition at 91 (stating that she did not voice an objection to sitting in the seat). Similarly, she apparently did not object when the flight engineer fastened her seat belts for her.

Moreover, Schroeder has failed to point out any threats that were made to her in order to keep her in the cockpit. *See id.* at 86 (stating that she was not threatened by Lufthansa). The fact that Schroeder felt "compelled" to stay in the cockpit is not by itself unlawful restraint; she must present facts indicating that she submitted to a

---

and harmful nature...." Plaintiff's First Amended Complaint, Rec. 63, ¶ 44 (Count III). Because this part of her battery claim derives

from the RCMP's search of Schroeder, Lufthansa cannot be held liable for it, and therefore, it is unnecessary for us to discuss it.

threat, express or implied, or yielded to physical force. *See Lopez,* 466 N.E.2d at 1312. Because Schroeder has failed to present specific facts indicating that she was even restrained by Lufthansa, the district court properly granted summary judgment in favor of Lufthansa on her false arrest and false imprisonment claims.

Additionally, even if we were to construe her stay in the cockpit as an "arrest," Lufthansa's actions were justified. As we have already discussed, Illinois law gives an individual the right to arrest another person so long as he has reasonable grounds to believe that the other person is committing a crime. ILL.STAT.ANN. ch. 38, ¶ 107–3 (Smith–Hurd 1980). An arrest pursuant to this statute cannot form the basis for civil liability. *Dutton,* 426 N.E.2d at 608; *Karow,* 357 N.E.2d at 686. Because the pilot had received a radio message that Schroeder had a bomb on her or in her luggage, Lufthansa had reasonable grounds to believe that she was committing a crime; thus, Lufthansa was fully justified in detaining her until the bomb threat could be thoroughly investigated.

### B. Battery

Under Illinois civil law, a battery is defined as the unauthorized touching of another person. *See Gaskin v. Goldwasser,* 166 Ill.App.3d 996, 117 Ill.Dec. 734, 743, 520 N.E.2d 1085, 1094, *appeal denied,* 121 Ill.2d 569, 122 Ill.Dec. 437, 526 N.E.2d 830 (1988); *Parrish v. Donahue,* 110 Ill.App.3d 1081, 66 Ill.Dec. 860, 862, 443 N.E.2d 786, 788 (1982). "To be liable for battery, the defendant must have done some affirmative act, intended to cause an unpermitted contact." *Mink v. University of Chicago,* 460 F.Supp. 713, 717 (N.D.Ill.1978); *accord Gaskin,* 520 N.E.2d at 1094. Not all unconsented contacts, however, are batteries. The contact must be of a harmful or offensive nature. *See Welch v. Ro–Mark, Inc.,* 79 Ill.App.3d 652, 34 Ill.Dec. 910, 914, 398 N.E.2d 901, 905 (1979) ("A plaintiff may recover for civil assault and battery where the defendant intentionally acted to cause harmful or offensive contact with the plaintiff.").

In her first amended complaint, Schroeder alleges that Lufthansa personnel physically removed her from her seat in the passenger cabin and forcibly strapped and restrained her in a seat in the cockpit. Plaintiff's First Amended Complaint, Rec. 63, ¶¶ 15, 43 (Count III). Schroeder claims that these acts were done without her consent and constituted physical contacts of "an offensive and harmful nature." *Id.* ¶ 43 (Count III).

A review of the record demonstrates that Lufthansa did not commit battery. First, Schroeder has failed to present any facts to support her allegation that she was physically removed from her seat in the passenger section of the airplane. *See* Schroeder Deposition at 89 (stating that no one physically removed her from her seat). A bare allegation, by itself, is insufficient to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Posey,* 702 F.2d at 105. Moreover, although there is some minimal evidence to suggest that a flight attendant took her by the arm and led her to the cockpit, this contact cannot be considered harmful or offensive. Schroeder voluntarily went with the flight attendant (which suggests consent) and apparently never indicated to the flight attendant that she was harmed or offended by this alleged touching. Additionally, we fail to see how Lufthansa tortiously injured Schroeder in the cockpit. Although the flight engineer may have fastened her seat belts for her, this contact cannot be interpreted as harmful or offensive.

The harmful or offensive nature of the unauthorized contact is readily evident in those cases in which Illinois courts have imposed civil liability for battery. *See, e.g., Parrish,* 443 N.E.2d at 788 (finding liability when the defendant hit the plaintiff with the butt of his handgun); *Bernesak v. Catholic Bishop,* 87 Ill.App.3d 681, 42 Ill. Dec. 672, 673–74, 409 N.E.2d 287, 288–89 (1980) (finding liability when, in the attempt to aid the plaintiff, she was hoisted onto a chair and her injured leg was pushed and pulled). If we were to construe either of the innocuous contacts of which Schroe-

der complains as harmful or offensive, we would essentially be excising this requirement from the tort of battery. Therefore, the district court properly granted summary judgment in favor of Lufthansa on this claim.

Moreover, even if we consider either of these contacts to be in some way harmful or offensive, we still find that Lufthansa's actions were reasonable and justified. Under Lufthansa's Tariff No. PR–3 (Civil Aeronautics Board No. 55),[7] Lufthansa had the authority to remove enroute any passenger "when the conduct, age, status or mental or physical condition of the passenger is such as to ... involve any hazard or risk to himself or to other persons or to property." Defendant's Motion for Summary Judgment, Rec. 140, Exhibit 3. Once the pilot received the radio message that a bomb was on Schroeder or in her luggage, her status changed from a normal passenger to a criminal suspect who posed a potential threat to all the passengers on the plane. In requesting that she come to the cockpit and remain there in a seat with the seatbelt fastened, Lufthansa acted reasonably and justifiably in accordance with its tariff.

### C. Intentional Infliction of Emotional Distress

Recently, the Illinois Supreme Court reiterated the elements of a cause of action for intentional infliction of emotional distress:

First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that this conduct will cause severe emotional distress. Third, the conduct must in fact cause *severe* emotional distress.

*McGrath v. Fahey*, 126 Ill.2d 78, 127 Ill. Dec. 724, 727, 533 N.E.2d 806, 809 (1988); *see Heying v. Simonaitis*, 126 Ill.App.3d 157, 81 Ill.Dec. 335, 341, 466 N.E.2d 1137,

1143 (1984). A plaintiff can maintain an action for intentional infliction of emotional distress even though the defendant's conduct did not result in physical injury or the threat of physical injury. *See Debolt v. Mutual of Omaha*, 56 Ill.App.3d 111, 13 Ill.Dec. 656, 658, 371 N.E.2d 373, 375 (1978).

The conduct of the defendant, however, must be more than "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *McGrath*, 533 N.E.2d at 809; *accord Public Fin. Corp. v. Davis*, 66 Ill.2d 85, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1976); *Kelly v. Franco*, 72 Ill.App.3d 642, 28 Ill.Dec. 855, 859–60, 391 N.E.2d 54, 58–59 (1979). It must be so extreme and outrageous that it goes beyond all possible bounds of decency. *E.g., Miller v. Linden*, 172 Ill.App.3d 594, 122 Ill.Dec. 675, 677, 527 N.E.2d 47, 49 (1988); *Plocar v. Dunkin' Donuts of Am., Inc.*, 103 Ill.App.3d 740, 59 Ill.Dec. 418, 422, 431 N.E.2d 1175, 1179 (1981). Of course, in determining whether the defendant's conduct was extreme and outrageous, we must look at the facts of each particular case, *see, e.g., Burgess v. Chicago Sun–Times*, 132 Ill.App.3d 181, 87 Ill.Dec. 292, 296, 476 N.E.2d 1284, 1288 (1985); *Farnor v. Irmco Corp.*, 73 Ill.App.3d 851, 29 Ill.Dec. 894, 898, 392 N.E.2d 591, 595 (1979), which we judge by an objective standard, *see Miller*, 527 N.E.2d at 49; *Farnor*, 392 N.E.2d at 595.

In her first amended complaint, Schroeder alleges that Lufthansa's actions of "removing [her] from her seat, constraining her in the cockpit, [and] accusing her of being a terrorist ... amounted to extreme and outrageous conduct which resulted in the intentional infliction of emotional distress." Plaintiff's First Amended Complaint, Rec. 63, ¶¶ 43–44 (Count IV). Schroeder further alleges that Lufthansa performed these actions "wilfully, intentionally and wantonly with the intent of causing [her] to suffer." *Id.* ¶ 45 (Count IV).

---

7. "International air carriers are required to file tariffs with the [Civil Aeronautics Board] specifying ... the rates and conditions of their services...." *Trans World Airlines, Inc. v. Frank-*

*lin Mint Corp.*, 466 U.S. 243, 247, 104 S.Ct. 1776, 1780, 80 L.Ed.2d 273 (1984); *see* 49 U.S.C.App. § 1373(a); Tariffs, 14 C.F.R. § 221.38 (1988).

■ After reviewing the record, however, we have determined that Schroeder has failed to state a cause of action for intentional infliction of emotional distress. First, even if we were to accept her conclusory allegations as true, Lufthansa's actions would not rise to the level of extreme and outrageous conduct. Asking Schroeder to come to the cockpit, questioning her concerning the bomb threat, and having her remain seated in the cockpit with a fastened seatbelt cannot be considered actions beyond all possible bounds of decency. Illinois courts have rejected claims for intentional infliction of emotional distress based on far more egregious conduct than that exhibited by Lufthansa. *See, e.g., Public Fin. Corp.*, 360 N.E.2d at 767–68 (harassing the plaintiff for the repayment of a debt while she was in a hospital and inducing her to write a check); *Plocar*, 431 N.E.2d at 1180 (threatening the plaintiff with abusive language).

■ Second, on more than one occasion, Illinois courts have dismissed actions for intentional infliction of emotional distress because the plaintiffs failed to allege specific facts to support their allegations. *See, e.g., Burgess*, 476 N.E.2d at 1289; *McCaskill v. Barr*, 92 Ill.App.3d 157, 47 Ill.Dec. 211, 213, 414 N.E.2d 1327, 1329 (1980). Schroeder's first amended complaint suffers from the same deficiency. For example, Schroeder has failed to allege specific facts and the record contains no facts to support her allegation that she was called a terrorist. *See* Schroeder Deposition, at 50, 98, 104 (stating that she never heard Lufthansa tell anyone she was a terrorist or accuse her of being a terrorist). Similarly, we find only conclusory allegations to support Schroeder's claim that her detention in the cockpit was extreme and outrageous conduct.

■ Finally, Schroeder essentially argues that "the degree of power or authority which a defendant has over a plaintiff can impact upon whether that defendant's conduct is outrageous." *McGrath*, 533 N.E.2d at 809; *see Public Fin. Corp.*, 360 N.E.2d at 767. Although Lufthansa's relationship to Schroeder gave it actual or apparent authority over her while she was on the plane, Illinois courts have held that such a relationship by itself does not relieve the plaintiff from alleging with specific facts the extreme and outrageous conduct of the defendant. *Plocar*, 431 N.E.2d at 1180; *Farnor*, 392 N.E.2d at 596. Schroeder has failed to allege facts from which we could infer that Lufthansa threatened to exercise its authority over her to her detriment. *See McGrath*, 533 N.E.2d at 809. Moreover, in reviewing an allegation of abuse of authority or power, Illinois courts also look at "whether the defendant reasonably believed that his objective was legitimate." *Id.* at 810. In this regard, Lufthansa clearly had a reasonable belief that it was investigating a bomb threat. Therefore, because Schroeder has failed to allege facts sufficient to establish a cause of action for intentional infliction of emotional distress, the district court properly granted summary judgment in favor of Lufthansa on this claim.[8]

## IV. *Conclusion*

We realize that Christine Schroeder was an innocent victim of this malicious bomb threat. Our review of the record, however, compels us to agree with the district court that Lufthansa is not liable for any injury she may have suffered. Therefore, for all the reasons discussed above, the judgment of the district court is

AFFIRMED.

---

**8.** Because we hold that Schroeder has failed to state a cause of action for intentional infliction of emotional distress, we do not need to decide whether emotional injury is recoverable under the Warsaw Convention. Moreover, since we have affirmed the district court's granting of summary judgment in favor of Lufthansa as to all claims, we do not need to determine whether the Warsaw Convention's liability cap would apply.