Marta GUZMAN, Plaintiff,

v.

ABBOTT LABORATORIES, Defendant.

No. 98 C 3229.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 10, 1999.

John P. DeRose, Kenneth A. Jatczak, Anthony T. Capua, John P. DeRose & Associates, Burr Ridge, IL, for plaintiff.

Laura Jane Schumacher, Abbott Laboratories, Legal Division, Abbott Park, IL, Walter Jones, Jr., Carole A. Corns, Pugh, Jones & Johnson, P.C., Chicago, IL, for defendant.

## *MEMORANDUM OPINION AND ORDER*

ALESIA, District Judge.

Before the court is defendant Abbott Laboratories' motion to "strike inadmissible portions of plaintiff's filings in response to defendant's motion for summary judgment" and motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the court denies in part and grants in part defendant's motion to strike and defendant's motion for summary judgment.

## I. *BACKGROUND*[1]

Plaintiff Marta Guzman ("Guzman") is a female of Mexican ancestry who worked for the defendant Abbott Laboratories ("Abbott") from July 1, 1985 to August 16, 1996. Abbott is an Illinois corporation engaged in the development, manufacture, and sale of pharmaceutical, nutritional, hospital, chemical, and medical diagnostic products.

On May 26, 1998, Guzman filed a three-count complaint against defendants Abbott Laboratories, Susan Kenski–Sroka, Denise Vickers, Marsha Christoffel, and Kay Neeland.[2] Both Count I and II are claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and Count III is a claim under Illinois tort law. Count I alleges that defendants violated Title VII by terminating her employment because of her Mexican ancestry. Count II alleges that defendants violated Title VII by creating a hostile working environment. Count III alleges that the defendants intentionally inflicted emotional distress on Guzman.

On July 19, 1998, the court (1) dismissed Counts I and II without prejudice as to the individual defendants, Susan Kenski–Sroka, Denise Vickers, Marsha Christoffel, and Kay Kneeland and (2) dismissed Count III without prejudice as to all defendants.

The matter is currently before the court on Abbott's motion for summary judgment. Abbott contends that it is entitled to judgment as a matter of law on Count I because (1) Guzman has failed to establish a prima facie case of employment discrimination and (2) even if Guzman has established a prima facie case, Abbott has legitimate nondiscriminatory reasons for terminating her employment. Abbott also contends that it is entitled to judgment as a matter of law on Count II because (1) Guzman has failed to establish that her supervisors created a hostile working environment and (2) even if her supervisors did create a hostile working environment, Guzman has failed to establish that Abbott knew or should have know of the harassment. The court is also reviewing Abbott's motion to strike several of the exhibits Guzman has attached to her re-

---

1. Unless otherwise indicated, the following facts are taken from the parties' Local General Rule 12(M) and 12(N) Statements. *See infra* Part II.B.2 (addressing the impact of Guzman's failure to comply with Local General Rule 12 on the court's determination of the undisputed facts.)

2. Guzman incorrectly named Kay Kneeland as Kay Neeland.

sponse to Abbott's motion for summary judgment.

In order to understand this court's opinion, one must be aware of a number of facts. For the sake of clarity, a recitation of these facts are in three parts. Part A discusses events which occurred with respect to Abbott's motion to strike. Part B discusses events which occurred with respect to Guzman's employment discrimination claim. Part C discusses events which occurred with respect to Guzman's hostile working environment claim.

### A. *Events relating to Abbott's motion to strike*

On August 13, 1998, Abbott served Guzman with a set of interrogatories and a request for production of documents. Among the requested documents were the following:

[2] All documents that constitute, refer, or relate to instructions, job training, or your responsibilities at ABBOTT LABORATORIES.

[5] Any and all documents you removed from the premises at ABBOTT LABORATORIES or received from past or present employees of ABBOTT LABORATORIES.

[8] All documents which constitute, reflect, refer, or relate to any communications, consultations, or transmissions of information between you and any other person relating to the damages and/or injuries you claim to have suffered as a result of incidents alleged in your Complaint.

[19] All medical records, hospital records, letters, correspondence and documents from and to all physicians, clinics, and any other medical personnel concerning your mental, psychological, and/or emotional health or condition between July 1, 1985 to present.

[20] All documents and other information regarding medication or other treatment prescribed to you for your emotional, psychological or mental conditions from July 1, 1985 to present.

(D.Mot. to Strike ¶ 1.) Guzman's responses were due on September 12, 1998. However, Guzman did not respond until November 16, 1998 after several letters between the parties' attorneys. Nevertheless, Guzman did not produce several of the exhibits attached to her response to Abbott's motion for summary judgment prior to the close of discovery.

### B. *Events relating to Guzman's employment discrimination claim*

Abbott first hired Guzman as a bilingual secretary in its international division. On April 6, 1987, Guzman became an accounting clerk within Abbott's international division. Almost two and a half years later, on July 17, 1989, Abbott promoted Guzman to the position of Network Administrator for Abbott's Stock Retirement Plan.

From 1989 to 1992, John Olin ("Olin") was Guzman's direct supervisor. As Guzman's supervisor, Olin evaluated Guzman's work performance. On August 22, 1991, Olin noted that Guzman's "multiple and sometimes extended absences last year prevented the progress" for which he was hoping. (D.Ex.37.) Between November of 1991 and November of 1992, Olin recorded more than forty-four days on which Guzman was absent from work in eleven separate incidents. After these absences, Olin formally warned Guzman that her repetitive absences were resulting in her inadequate performance because she was not able to complete her daily tasks.

During late 1993, Abbott decided to outsource the Retirement Funds network to Putnam Investments. Thus, the Network Administrator position was eliminated. Sometime thereafter, Guzman decided to interview for a position in the Credit Department. On October 31, 1994, Guzman became Senior Credit Assistant and received training and training materials. As Senior Credit Assistant, Guzman reviewed,

inputted information into and accessed information from the Accounts Receivable Management System, released orders for shipment, contacted customers regarding delinquent accounts, did paperless inquiries on customer complaints, and resolved customer complaints.

From December 16, 1994 through January 4, 1995, Guzman took vacation or personal leave from work. Then from January 11, 1995 through January 30, 1995, Guzman took sick leave from work.

On March 15, 1995, Keith Harper ("Harper") and John Moore ("Moore"), two of Guzman's supervisors, met with Guzman to discuss her responsibilities and their expectations. At this time, Harper and Moore went over Guzman's 1994 Performance Review with her. This review stated that she did not completely understand her job assignment, required a high degree of structure to optimize her output, became distracted when working on more than one task, and required additional training.

On April 28, 1995, Harper and Denise Vickers ("Vickers"), another of Guzman's supervisors, met with Guzman to discuss her performance and tardiness. However, Guzman asserts that the main topic of this meeting was not her performance but rather the personality conflict between her and Moore. (Pl.Ex.10.) To accommodate Guzman's concerns about her relationship with Moore, Guzman was temporarily transferred to another set. Then, at the end of July, Susan Kenski–Sroka ("Kenski–Sroka") requested that Guzman be transferred to her set.

During July of 1995, Marsha Christoffel ("Christoffel"), another supervisor, noticed an increase in the volume of past due accounts in Kenski–Sroka's set. Then, during August of 1995, Kenski–Sroka also noticed an increase in the number of past-due accounts in her set. Based on these increases, Christoffel and Kenski–Sroka

met with Guzman to discuss her past-due accounts. At this time, they discovered that Guzman did not understand how to read the reports or how to distinguish between the "bills from" account and the "bill tos" (sic) account. Guzman claims, however, that at this time she did understand these tasks but that neither Christoffel nor Kenski–Sroka listened to her protestations that she did understand. (Pl.Ex. 21 at 10 ¶ 72.)

On September 5, 1995, Kenski–Sroka provided Guzman with additional written instructions of her job duties. However, Guzman claims this was done to embarrass her because the instruction sheet was so large that it looked as if it was prepared for the visually impaired. (*Id.* at 10 ¶ 76.)

On October 25, 1995, Kenski–Sroka and Christoffel informed Guzman that her performance was marginal and that they were placing her on probation. Thereafter, Christoffel advised Guzman that it was absolutely imperative that her attendance and performance improve within ninety days or she would be terminated.

However, on November 13, 1995, Guzman fell in the parking lot and went to the Employee Health Department. That day, Guzman left the office and did not return until January 8, 1996. Due to this last absence, Abbott extended Guzman's probationary period until March 29, 1996.

During this extension, Christoffel and Kenski–Sroka met with Guzman on February 7, 1996. In this meeting, Christoffel and Kenski–Sroka advised Guzman that one of her accounts had a past-due balance of over $131,000 and that she had failed to contact this account during the month of January. However, Guzman claims that this failure was due to her absence from work.[3] (Pl.12(N) Statement at 16 ¶ 69.)

On February 12, 1996, Christoffel and Kenski–Sroka met with Guzman again. At this meeting, they noted Guzman's incorrect or insufficient documentation on spe-

---

**3.** However, Guzman returned to work on January 8th. Thus, at the most, she missed only seven days of work during the month of January.

cific accounts and also her lack of follow-up or inappropriate follow-up on eight accounts. Christoffel and Kenski–Sroka also met with Guzman on February 20, 1996, February 26, 1996 and March 5, 1996 to discuss continuing deficiencies. At the March 5th meeting, Kenski–Sroka pointed out to Guzman her continuing problems of not following up with customers, not providing appropriate follow-up, and not paying attention to detail.

On March 14, 1996, Guzman received her Performance Review for the period from January 1, 1995 through December 31, 1995. This review stated that Guzman had not performed satisfactorily and that, instead of taking responsibility for her own performance, she blamed others for her poor performance. On this day, Christoffel and Kenski–Sroka met with Guzman. During this meeting, they discussed her Performance Review and explained to her that, if her performance did not improve by March 29th, she would be terminated.

The following day, Guzman was admitted to and released from Saint Therese Medical Center for depression. (Pl.Ex. 21 BB.) Thereafter, on March 18, 1996, Guzman called in sick to work and did not return until August 3, 1996.

On August 13, 1996, Christoffel and Vickers met with Don Salby, the head of the Credit Department, and Mike Spengler in Human Resources. During this meeting, they discussed Guzman's failure to improve her performance during her probation and decided to terminate her employment. Later that day, Christoffel and Vickers met with Guzman to advise her that her employment would be terminated as of August 16, 1996.

### C. *Events relating to Guzman's hostile working environment claim*

Guzman alleges that Moore, Harper, Kenski–Sroka, Vickers, and Christoffel harassed her on a daily basis by making derogatory comments about her Mexican ancestry and about the Hispanic doctors who were Abbott's clients. (Pl.Ex. 8 at 13 ¶¶ 9–17 & Ex. 9 at 286 ¶¶ 8–10.)

Furthermore, on one occasion, Guzman believes that Kenski–Sroka told Guzman that the reason she did not do her job might be because she was Mexican, (Pl.12(N) Statement & Pl.Ex. 8 at 24 ¶¶ 18–22.), and, on another occasion, said "If these damn Hispanics can't pay their bills, they should maybe learn the language or get out of business. They're in the United States." (Pl.Ex. 8 at 17 ¶¶ 4–7.) She also alleges that Kenski–Sroka made other similar comments to her throughout the day. (*Id.* at 16–17.)

Guzman alleges that Christoffel also made daily comments about the "damn Hispanics" and their need to learn English. (*Id.* at 19 ¶¶ 3, 20–21 & 23 ¶ 1–6.) Furthermore, Guzman asserts that whenever she would ask Christoffel a question about collections, Christoffel always responded with a harassing comment about Guzman's Mexican heritage. (*Id.* at 21 ¶¶ 9–11, 14–16.) Finally, Guzman alleges that Vickers also constantly made derogatory comments regarding Hispanics. (*Id.* at 20 ¶¶ 18–21.)

With respect to all of these allegedly derogatory comments, Guzman claims that she informed each of the individuals responsible that they offended her. (Pl.Ex. 9 at 284 ¶ 4–8.) Furthermore, Guzman claims that she also informed Kay Kneeland ("Kneeland") of Human Resources that these comments were offensive. (*Id.* at 283 ¶¶ 4–13.)

### II. *DISCUSSION*

#### A. *Motion to Strike*

■ As a threshold issue, the court will dispose of Abbott's motion to strike because it is necessary to establish what materials are properly before the court in support of Abbott's motion for summary judgment. In support of its response to Abbott's motion for summary judgment, Guzman submitted fifty-four exhibits and a Local General Rule 12(N) Statement. In

response, Abbott has filed a motion to strike exhibits 15–18, 20, 21 B, E–J, L, O–P, T, BB–CC of Guzman's response and paragraphs 17, 22–23, 28, 30, 33, 36–37, 47, 49, 58–59, 62–64, 68–69, 76, 84, and 116–18 of Guzman's affidavit. Abbott argues that (1) pursuant to Federal Rule of Civil Procedure 26(e)(2) ("Rule 26(e)(2)"), Guzman should have produced the exhibits prior to the close of discovery and the filing of her response, (2) statements in exhibit 21 CC and Guzman's affidavit contain inadmissible hearsay and (3) statements in Guzman's affidavit are not within her personal knowledge.

### 1. Abbott's motion to strike exhibits 15–18, 20, 21 B, E–J, L, O–P, and T

Abbott alleges that Guzman should have produced exhibits 15 (notes taken by Guzman) and 21 I and O (training materials) in response to document request number 2, exhibits 16 (a newsletter), 17 and 18 (lists of award winners), and 21 B, E–H, J, L, P, and T (documents received from past or present employees of Abbott) in response to document request number 5 and exhibit 20 (an earning statement) in response to document request number 11. Abbott argues that the court should not consider these documents because they were not produced in accordance with Rule 26(e)(2). However, Guzman alleges that the court should not strike these exhibits because exhibits 16–18, 21 B, E–J, L, O–P, and T were all prepared by Abbott.

Rule 26(e)(2) delineates a party's duty to supplement or correct prior disclosures. Rule 26(e)(2) states:

A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

FED.R.CIV.P. 26(e)(2).

In this case, Guzman failed to provide some of its exhibits in response to Abbott's specific document requests and failed to comply with Rule 26(e)(2) by failing to amend her prior disclosures. However, because Abbott does not dispute that most of these exhibits were prepared by its employees, Abbott cannot say that it is unfairly surprised by any of the exhibits which it originally prepared. *See Architectural Iron Workers Local No. 63 Welfare Fund v. United Contractors, Inc.,* 46 F.Supp.2d 769, 772 (N.D.Ill.1999); *see also Sharp v. I.S., Inc.,* 685 F.Supp. 688, 695 (S.D.Ill.1988) ("The Court finds that defendants cannot be unfairly surprised by a document that was most likely already in their possession and certainly within their ken."). Thus, the court will not strike any of the documents prepared by Abbott but will strike the documents which it did not prepare. Accordingly, the court denies Abbott's motion to strike exhibits 16–18, 21 B, E–J, L, O–P, and T but grants Abbott's motion to strike exhibit 15. Furthermore, the court also grants Abbott's motion to strike exhibit 20 because Guzman does not contest its inadmissibility pursuant to Rule 26(e)(2).

### 2. Abbott's motion to strike exhibits 21 BB and CC

Abbott alleges that Guzman should have produced exhibits 21 BB and CC (Guzman's medical records) in response to its document request numbers 8, 19 and 20. Abbott again argues that the court should not consider the documents in these two exhibits because Guzman failed to produce them in accordance with Rule 26(e)(2). Guzman, however, alleges that, because the doctors were listed in her answers to interrogatories and Abbott examined her about these doctors during her deposition, Rule 26(e)(2) does not require her to supplement her written responses.

The court will not strike exhibits 21 BB and CC in this case. In Guzman's response to Abbott's document request number 19, Guzman states: "Plaintiff has requested her medical records from Dr. Barrionuevo, Dr. Soriano and Dr. Alex Sanchez (took over Dr. Soriano's practice) and will provide copies of said records when they are received." (D.Ex. 2 at 16, ¶ 19.) Abbott cannot claim that it was unfairly surprised by these medical records; Abbott was aware of the treating doctors and could have issued a subpoena itself for these medical records. *See Charles v. Cotter*, 867 F.Supp. 648, 654 (N.D.Ill.1994); *see also* 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE R. 26 (1994) ("There is ... no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process."). Accordingly, the court denies Abbott's motion to strike exhibits 21 BB and CC pursuant to Rule 26(e)(2).

■ Abbott also moves to strike exhibit 21 CC because it is "replete" with inadmissible hearsay. More specifically, Abbott objects to Guzman's statements to the psychiatrist that she was "being harassed and discriminated upon by her supervisors," "she has been doing her work well" and she believed there "is no need for this harassment and outright persecution." (D.Mot. to Strike at 4 ¶ 10.) Guzman, however, alleges that these statements are not hearsay because they qualify as statements made for the purpose of medical diagnosis or treatment or relate to Guzman's then existing mental, emotional, or physical condition.

Federal Rule of Evidence 803(4) ("Rule 803(4)") provides an exception to the hearsay rule for statements made for the purpose of medical diagnosis or treatment. FED.R.EVID. 803(4). Rule 803(4) excepts the following from the hearsay rule:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or the general character of the cause or the external source thereof insofar as reasonably pertinent to diagnosis or treatment.

*Id.* Thus, statements made by the person seeking medical attention can fall within the exception. However, statements made by the person providing the medical attention do not fall within the exception. *See Gong v. Hirsch*, 913 F.2d 1269, 1273–74 & n. 5 (7th Cir.1990). The test for determining whether the statements fall within this exception is "whether such statements are of the type reasonably pertinent to a physician in providing treatment." *Cook v. Hoppin*, 783 F.2d 684, 690 (7th Cir.1986).

Abbott claims that these statements are not the type which medical personnel generally rely on in making their diagnoses. The court would agree with this allegation if Guzman was seeing a physician for a broken arm or a similar type of injury. Guzman, however, was seeking treatment from a psychiatrist. What Guzman believed to have been the cause of her illness was, therefore, extremely relevant to a psychiatrist's treatment and/or diagnosis. *See United States ex rel. John Gacy v. Welborn*, No. 89 C 6392, 1992 WL 211018, at *23 (N.D.Ill. Aug.26, 1992) ("The psychiatrist has no temperature or pulse to take, no x-rays to read and no open wound to examine. What he has for the most part is what he hears from the mouth of the patient, together with what little there may be in the way of visually observable signs."). Thus, the court finds that these statements fall within this hearsay exception. Accordingly, the court denies Abbott's motion to strike these statements from exhibit 21 CC.

### 3. *Abbott's motion to strike certain paragraphs of Guzman's affidavit*

Abbott alleges that certain paragraphs of Guzman's affidavit (1) are based upon unproduced documents, (2) contain inadmissible hearsay or (3) are not within Guzman's personal knowledge. Thus, Abbott

argues that the court should strike these statements pursuant to Federal Rule of Civil Procedure 56(e) ("Rule 56(e)").

Rule 56(e) can be used to strike portions of a summary judgment motion and its supporting documents. Rule 56(e) provides that affidavits in support of a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein." FED.R.CIV.P. 56(e).

### a. Paragraphs 17, 22–23, 28, 36–37, 47, 49, 69, and 116–18 of Guzman's affidavit

Abbott alleges that the court should strike paragraphs 17, 22–23, 28, 36–37, 47, 49, 69, and 116–18 of Guzman's affidavit because she relies on previously unproduced documents as support for her statements. However, the court did not strike all of the unproduced documents attached as exhibits to Guzman's response to Abbott's motion for summary judgment. Thus, the court will only strike the paragraphs of Guzman's affidavit which rely on documents which the court has previously stricken. All of the disputed paragraphs cite documents which the court declined to strike. Accordingly, the court denies Abbott's motion to strike paragraphs 17, 22–23, 28, 36–37, 47, 49, 69, 116–18.

### b. Paragraphs 30, 33, 68, and 84 of Guzman's affidavit

Abbott contends that paragraphs 30, 33, 68, and 84 of Guzman's affidavit contain inadmissible hearsay because the paragraphs consist of statements made by other people. Paragraph 30 alleges that Vickers and Christoffel urged Guzman to send her resume to the manager of the Credit Department. (Pl.Ex. 21 at ¶ 30.) Paragraph 33 contends that Harper told Guzman that "he had not rated well as a manager." (*Id.* at ¶ 33.) Paragraph 68 states that Angela Logan ("Logan"), one of

Guzman's co-workers, "was 'told by management' that she was not to assist . . . [Guzman] with any of . . . [Guzman's] job responsibilities." (*Id.* at ¶ 68.) Finally, paragraph 84 alleges that Logan told Guzman "to seek legal advice because management was trying to use . . . [Logan] against [her]." (*Id.* at ¶ 84.) Guzman, however, contends that each of the statements in these paragraphs are admissible as admissions by a party-opponent.

Federal Rule of Evidence 801(d)(2)(D) ("Rule 801(d)(2)(D)") provides that a statement is not hearsay if it "is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of that relationship." FED.R.EVID. 801(d)(2)(D). Such statements are presumably reliable in the absence of cross-examination because an agent "who speaks on any matter within the scope of his agency or employment during the existence of that relationship, is unlikely to make statements damaging to his principal or employer unless those statements are true." *Nekolny v. Painter,* 653 F.2d 1164, 1172 (7th Cir.1981). To be admissible under Rule 801(d)(2)(D), however, the statements must concern matters within the scope of the declarant's employment, not just be made within the scope of the employment. *See id.*

In this case, Guzman has offered no evidence to show that any of these statements concerned matters "within the scope" of the declarant's employment. Thus, the court cannot find that these statements are admissions by a party-opponent. Accordingly, the court grants Abbott's motion to strike paragraphs 30, 33, 68, and 84 of Guzman's affidavit.

### c. Paragraphs 58–59, 62–64, and 76 of Guzman's affidavit

Abbott requests the court to strike paragraphs 58–59, 62–64, and 76 of Guzman's affidavit because the statements in those

paragraphs are not based on Guzman's personal knowledge. Abbott compares all of the statements in these exhibits to the statement by the plaintiff in *Adusumilli v. City of Chicago*, 164 F.3d 353, 359 (7th Cir.1998), that "as time passed, it became apparent to me that the harassment was based upon my gender and national origin." The court, in *Adusumilli*, found that particular statement outside the affiant's personal knowledge because it addressed the reasons that her co-workers allegedly harassed her. *Id.*

■ In this case, paragraph 58 alleges that Moore purposely made comments so that Guzman could hear them, (Pl.Ex. 21 at ¶ 58.), and paragraph 59 contends that Moore knew what he wanted to tell Guzman but, instead of telling her directly, he would speak loud enough so she could overhear him. (*Id.* at ¶ 59.) The court finds that these statements are outside Guzman's personal knowledge because Guzman could not have known Moore's subjective intent when he was speaking. Thus, the court grants Abbott's motion to strike paragraphs 58 and 59 of Guzman's affidavit.

■ Paragraph 62 alleges that, in an attempt to demean and embarrass Guzman, Kenski–Sroka and Christoffel both said: "'This is the United States, Marta. We are not in Mexico. Hello! Can you read my lips.'" (*Id.* at ¶ 62.) Furthermore, paragraph 63 contends that, also in an attempt to demean and embarrass her, Christoffel sarcastically asked Guzman: "Did you know that the Spanish were taken over by the French?" (*Id.* at ¶ 63.) The court finds the portions of the paragraphs asserting that the statements were made to demean and embarrass Guzman to be outside of her personal knowledge because Guzman would not know Kenski–

Sroka and Christoffel's intent when they made the comments. However, both paragraphs will not be struck in their entirety because it may certainly be in Guzman's knowledge what Kenski–Sroka and Christoffel said.[4] Thus, the court grants Abbott's motion to strike in so far as the court only strikes the phrase "in an attempt to demean and embarrass Guzman" from paragraphs 62 and 63 of Guzman's affidavit.

■ Paragraph 64 alleges that Moore repeatedly said to Guzman: "You're trying to think in Spanish; we're talking English here." (*Id.* at ¶ 64.) The court finds nothing in this paragraph that would be outside of Guzman's personal knowledge. She would certainly know what Moore said to her.[5] Thus, the court denies Abbott's motion to strike paragraph 64 of Guzman's affidavit.

■ Finally, paragraph 76 alleges that: "The instruction sheet was enlarged as if it were prepared for the visually impaired and I was told by Kenski–Sroka to hang it on the wall for reference, all to Plaintiff's embarrassment and humiliation before my co-workers." (*Id.* at ¶ 76.) The court finds that this statement is outside of Guzman's personal knowledge because she is merely speculating as to the reason Kenski–Sroka enlarged the sign and asked Guzman to hang it. Thus, the court grants Abbott's motion to strike paragraph 76 of Guzman's affidavit.

In sum, the court denies Abbott's motion to strike exhibits 16–18, 21 B, E–J, L, O–P, T, BB and CC of Guzman's response and paragraphs 17, 22–23, 28, 36–37, 47, 49, 64, 69, and 116–18 of Guzman's affidavit. The court grants Abbott's motion to strike exhibits 15 and 20 and paragraphs

---

**4.** Abbott does not move to strike either of these statements as inadmissible hearsay which may in fact have been a better objection. Although, because Abbott does not allege this, the court will not address whether these statements are admissible under the hearsay rules.

**5.** Again, a better objection may have been based on hearsay, but, because Abbott does not make this objection, the court will not address the issue.

30, 33, 58, 59, 68, 76, and 84 of Guzman's affidavit and also paragraphs 62 and 63 of Guzman's affidavit in so far as the court strikes only the phrase "in an attempt to demean and embarrass Guzman." Having decided Abbott's motion to strike, the court will now proceed to Abbott's motion for summary judgment.

## B. *Motion for Summary Judgment*

### 1. *Standard for deciding a motion for summary judgment*

A motion for summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Smith v. Severn,* 129 F.3d 419, 425 (7th Cir.1997).

The burden is on the moving party to show that no genuine issues of material fact exist. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Once the moving party presents a prima facie showing that he is entitled to judgment as a matter of law, the non-moving party may not rest upon the mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505; *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989).

### 2. *Local General Rule 12*

■ Before addressing the merits of Abbott's motion for summary judgment, the court must address Guzman's failure to comply with Local General Rule 12 ("Rule 12"). Rule 12(M) requires the party moving for summary judgment to file, among other items, a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." LOCAL GEN.R. 12(M). The required statement is to consist of short numbered paragraphs, including within each paragraph specific cites to the record which support the facts set forth. *Id.* Rule 12(N) then requires the opposing party to file, among other items,

· a concise response to the movant's statement that shall contain: (a) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the records, and other supporting materials relied upon, and (b) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials.

LOCAL GEN.R. 12(N)(3). Rule 12(N) further provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party." *Id.* The Seventh Circuit has upheld strict compliance with Rule 12 on numerous occasions. *Huff v. UARCO Inc.,* 122 F.3d 374, 382 (7th Cir.1997).

In this case, Abbott filed a proper Rule 12(M) Statement. In response, Guzman submitted a Rule 12(N) Statement in which Guzman either admitted or denied the facts contained therein. However, in thirty-three of the paragraphs, Guzman admitted the facts contained therein and then proceeded to raise additional factual assertions. Such additional facts went beyond the "concise" response required by Rule 12(N)(3)(a). *Daulo v. Commonwealth Edison,* 938 F.Supp. 1388, 1395 (N.D.Ill.1996). The additional factual as-

sertions should have been submitted in the separate statement of additional facts pursuant to Rule 12(N)(3)(b). *Id.* Abbott would then have been required to respond to those additional facts or have them deemed admitted. LOCAL GEN.R. 12(M).

The court could strike the additional factual assertions made in Guzman's Rule 12(N)(3)(a) response. *Id.* (citing *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir.1994)). However, in fairness to Guzman, the court will not do so. Instead, the court will determine if the additional facts listed in the 12(N)(3)(a) response are supported by the evidence and then go from there.

### 3. *Title VII claims*

Guzman's claims against Abbott are for national origin discrimination in her employment ("employment discrimination") and for creating a hostile working environment in violation of Title VII.[6] Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion," or sex. 42 U.S C. § 2000e–2(a)(1). Each of Guzman's Title VII claims will be discussed in turn.

### a. Employment discrimination

Discrimination may be established in either of two ways—through direct or circumstantial evidence or through the indirect burden-shifting method set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See McCarthy v. Kemper Life Ins. Cos.,* 924 F.2d 683, 686 (7th Cir.1991). Under either method, Guzman must produce enough evidence to allow a jury to

infer that Guzman's race was the motivating factor in Abbott's decision to fire her. *See Hennessy v. Penril Datacomm Networks, Inc.,* 69 F.3d 1344, 1350 (7th Cir. 1995). Guzman does not contend that she has presented enough evidence sufficient to defeat Abbott's motion for summary judgment.[7] Not only does Guzman not allege any direct or indirect evidence of discrimination, she does not even address Abbott's motion for summary judgment on this claim. Thus, the court will do its best to address the evidence relating to her claim for employment discrimination.

### i. Direct or circumstantial evidence

Under the direct evidence method, the "plaintiff initially must prove 'through direct evidence that the employment decision at issue was based upon an impermissible factor.'" *McCarthy,* 924 F.2d at 686 (quoting *Randle v. LaSalle Telecomms., Inc.,* 876 F.2d 563, 568 (7th Cir.1989)). The evidence "must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question." *Randle,* 876 F.2d at 569. A statement is direct evidence only if it relates to the "motivation of the decision maker responsible for the contested decision." *Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 391, 395 (7th Cir.1997).

In this case, Guzman has alleged that many of her supervisors made derogatory comments regarding Mexicans and Hispanics. The alleged statements made by Kenski–Sroka, Vickers, Moore, Harper, and Christoffel, however, were not made contemporaneously with her termination. At the time of her termination, Christoffel and Vickers specifically informed Guzman that Abbott was terminating her employ-

---

**6.** Title VII clearly considers the asserted claims as separate causes of action to be analyzed independently. *Johnson v. City of Fort Wayne,* 91 F.3d 922, 937–38 (7th Cir. 1996) ("This court repeatedly has recognized that racial harassment is an independent basis for a Title VII claim.").

**7.** However, under her response to the motion for summary judgment on the hostile working environment claim, Guzman does provide a cursory review of pretext. Thus, the court will examine this in conjunction with Abbott's contention that the reason for her firing was her poor performance.

ment due to her poor performance. Thus, the trier of fact could not conclude that Guzman's termination was the result of any racial animus without adopting certain inferences and presumptions. That by definition is not direct evidence. *See Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 347 (7th Cir.1997) ("Direct evidence would be what [defendant] and its employees said or did in the specific employment decision in question.").

■ It may be, however, circumstantial evidence. Circumstantial evidence is evidence that provides "a basis for drawing an inference of intentional discrimination." *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 736 (7th Cir.1994). There are three types of circumstantial evidence which Guzman could rely upon in order to avoid the *McDonnell Douglas* burden-shifting method. *See id.* The first type is evidence consisting of "suspicious timing, ambiguous statements, oral or written, behavior directed toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Id.* The second type is evidence that similarly-situated employees who were not of Mexican descent received systematically better treatment. *See id.* The final type is evidence that "the plaintiff was qualified for the job in question but ... [was] replaced by a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, or a mere pretext for discrimination." *Id.*

Guzman has presented no evidence in this case of any circumstantial evidence of the first, second, or third type. Thus, the court will examine Guzman's case under the *McDonnell Douglas* burden-shifting method.

### ii. *McDonnell Douglas* burden-shifting method

■ Under *McDonnell Douglas,* the plaintiff must first establish, by a preponderance of the evidence, a prima facie case

of employment discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. To establish a prima facie case, Guzman must show: (1) she belongs to a protected group; (2) she performed satisfactorily; (3) she was subjected to an adverse employment action; and (4) similarly-situated employees outside of her classification received more favorable treatment. *Hughes v. Brown,* 20 F.3d 745, 746 (7th Cir.1994). If the plaintiff establishes a prima facie case, then "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its allegedly biased employment decision." *Johnson,* 91 F.3d at 931. If an employer meets its burden, then the plaintiff must show, by a preponderance of the evidence, that the employer's stated reason for dismissal is nothing more than pretext. *Id.* Pretext means a lie. *Id.* There are three ways to show that the proffered nondiscriminatory explanation is pretextual: (1) the employer's explanation had no basis in fact; (2) the explanation was not the "real" reason; or (3) the explanation was insufficient to warrant the adverse employment action. *Id.*

■ Guzman's claim of employment discrimination is based on Abbott's decision to terminate her employment. Guzman is a female of Mexican ancestry, thus she is a member of a protected class. Accordingly, the first element of her prima facie case is not in dispute. Furthermore, element three of the prima facie case is also met. Neither party disputes that Abbott subjected Guzman to an adverse employment action—Abbott's decision to terminate her employment.

Abbott, however, does contend that Guzman has failed to establish both element two and element four of the prima facie case. A plaintiff can establish the second element of the prima facie case through her own testimony that her performance was satisfactory. *Weihaupt v. American Med. Ass'n,* 874 F.2d 419, 428 (7th Cir. 1989). Guzman contends that her perfor-

mance was satisfactory until 1995 when Abbott transferred her to a new set of supervisors. However, her performance must have been satisfactory at the time of her termination not just at some time during her employment. *Hong v. Children's Memorial Hosp.*, 993 F.3d 1257, 1262 (7th Cir.1993). At the time of her termination, however, Abbott had placed Guzman under probation because of her poor performance and had warned her, that if her performance did not improve, Abbott would terminate her employment. Guzman does not dispute these facts. Thus, Guzman has failed to establish that her performance was satisfactory in August of 1996, the time of her termination.

By not establishing element two of the prima facie case, Guzman has failed to meet her burden of establishing a prima facie case of discrimination.[8] Thus, the court will not address Abbott's burden of offering a legitimate, nondiscriminatory reason for terminating Guzman's employment. Accordingly, the court grants Abbott's motion for summary judgment on Count I of Guzman's complaint.

**b. Hostile working environment**

Guzman also claims that Abbott subjected her to a hostile working environment. Abbott, however, contends that Guzman has failed to present evidence of a hostile working environment and to establish Abbott's liability for its supervisor's alleged statements.

Generally, whether a hostile working environment exists depends on whether the "quantity, frequency, and severity of the racial, ethnic, or sexist slurs create a work environment so hostile as to discriminate against the minority employee." *Vore v. Ind. Bell Tel. Co., Inc.*, 32 F.3d 1161, 1164 (7th Cir.1994). In other words, the harassment "must be sufficient-

ly severe or pervasive so as to alter the conditions of the victim's employment and to create an abusive working atmosphere." *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 479–80 (7th Cir.1996) (citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). When the misconduct continues despite the plaintiff's complaints, strong evidence of a hostile working environment is shown through a consistent pattern of complaints, *Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1456 (7th Cir.1994), or the repetition of offensive conduct, *Brooms v. Regal Tube Co.*, 881 F.2d 412, 420 (7th Cir.1989). *Grassmuck v. Chinn Enterprises, Inc.*, No. 95 C 3729, 1998 WL 177858, at *6 (N.D.Ill. April 13, 1998) (citing *Saxton v. A.T. & T. Co.*, 10 F.3d 526, 534 (7th Cir.1993)). The inquiry into whether the environment was sufficiently hostile or discriminatory involves a dual standard—an objective standard and a subjective standard. *Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1271–72 (7th Cir.1991) (quoting *Brooms*, 881 F.2d at 419). The objective standard focuses on the environment's effect on a reasonable person; the subjective standard focuses on the environment's actual effect on the particular employee. *Id.* at 1272.

In this case, Guzman alleges that on a continuous basis Moore, Harper, Kenski-Sroka, Vickers, and Christoffel made sarcastic and derogatory comments about Hispanics and Spaniards to her. With regard to any derogatory comments allegedly made by Moore or Harper, Abbott contends that the court cannot consider them because they are time-barred. Under Illinois law, an individual must file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged harassment. *See Speer v. Rand McNally & Co.*, 123 F.3d 658, 662

---

8. Thus, the court will not go into a detailed discussion of the fourth element. However, Guzman's prima facie case would also fail based on the fourth element. Guzman has not identified any similarly situated employee outside of her protected class that Abbott retained after a similar failure to improve his or her performance during the probationary period.

(7th Cir.1997). Failure to do so, bars the litigation of those claims. 42 U.S.C. § 2000e-5(e). Because Guzman filed her employment discrimination charges with the EEOC on March 1, 1996, any alleged conduct prior to May 7, 1995 is time-barred and cannot form the basis for this suit. Neither party disputes that neither Moore nor Harper supervised Guzman after April 28, 1995. Thus, this court will not consider any alleged statements made by Moore or Harper.

Aside from Moore and Harper, Guzman alleges that Kenski–Sroka, Christoffel and Vickers also made derogatory comments to her about Hispanics on a daily basis. Guzman also claims to have told each of the individuals involved that the comments were bothersome. Abbott, however, denies that Kenski–Sroka, Christoffel or Vickers made any of these alleged statements.

Assuming for the moment that these statements were made, would they be enough to create a hostile working environment? The court believes they would be.

■ These statements, although not always about her, were made on a daily basis by multiple supervisors of Guzman. Abbott claims that because these alleged statements were not always about Guzman, that the working environment was not hostile. For this proposition, Abbott relies upon *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1144–45 (7th Cir.1997). However, this court distinguishes the present case from *Gleason* because in *Gleason* it was only one coworker making the sexually offensive remarks and both men and women objected to his behavior. In this case, many of Guzman's supervisors made derogatory comments about her and other Hispanics and there is no evidence that other, non-Hispanic employees, objected to it.

This, however, does not end the inquiry. Guzman must prove that Abbott is liable for the statements allegedly made by its employees.

An employer's liability for a hostile working environment depends upon "whether the harasser is the victim's supervisor or merely a co-employee." *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir.1998) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998)). Neither party disputes that Kensi–Sroka, Christoffel, and Vickers were Guzman's supervisors. Thus, the court will focus on Abbott's liability for the conduct of its supervisors.

■ "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998). In order to prevent this rule from becoming one of automatic liability, the Supreme Court further held:

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence.... The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any ... harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Id.* However, the employer is not entitled to this affirmative defense, if the supervisor's harassment resulted in a tangible employment action. *Id.* A tangible employment action comprises a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 2268.

In this case, both parties simply address the affirmative defense, and thus, are proceeding under the assumption that none of the supervisors' harassment resulted in a tangible employment action. The court believes that the parties should have addressed this issue. However, because Guzman does not contest Abbott's assertion of the affirmative defense, the court will proceed under the assumption that Guzman concedes that the harassment did not result in a tangible employment action.

■ Thus, to prevail, Abbott must prove each element of the affirmative defense by a preponderance of the evidence of the material undisputed facts. *See Faragher,* 118 S.Ct. at 2279. On the first element, Abbott points to its detailed written anti-harassment policy which includes a procedure to follow for complaints. However, Abbott has not shown any corrective measures it took as to the alleged harassing behavior. This is due to the dispute between the parties as to whether Guzman followed the procedures of the anti-harassment policy by notifying a member of management or her human resource representative. Guzman asserts that she notified Kneeland of Human Resources of the various harassing behavior but Kneeland failed to take any corrective action. (Pl.Ex. 9 at 283 ¶¶ 4–24 & 10 ¶¶ 1–3.) Abbott, however, alleges that Guzman never notified Kneeland of the alleged harassment but only complained of personality conflicts. (Kneeland Dep. at 15–20, 22, 29.) Because both parties dispute whether Guzman actually informed Kneeland of the alleged harassment, Abbott cannot prove the first element of the affirmative defense. Thus, Abbott is not entitled to summary judgement on Guzman's hostile working environment claim. Accordingly, the court denies Abbott's motion for summary judgement on Count II of Guzman's complaint.

### CONCLUSION

For the foregoing reasons, the court (1) denies Abbott's motion to strike and (2) grants in part and denies in part Abbott's motion for summary judgment. Accordingly, the court enters the following orders:

1. The court denies Abbott's motion to strike exhibits 16–18, 21 B, E–J, L, O–P, T, BB, and CC of Guzman's response and paragraphs 17, 22–23, 28, 36–37, 47, 49, 64, 69, and 116–18 of Guzman's affidavit.

2. The court grants Abbott's motion to strike exhibits 15 and 20 of Guzman's response and paragraphs 30, 33, 58, 59, 68, 76, and 84 of Guzman's affidavit.

3. The court grants Abbott's motion to strike paragraphs 62 and 63 of Guzman's affidavit in so far as the court strikes only the phrase "in an attempt to demean and embarrass Guzman" from both paragraphs.

4. The court grants Abbott's motion for summary judgment on Count I of Guzman's complaint.

5. The court denies Abbott's motion for summary judgment on Count II of Guzman's complaint.